NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   AZ-11-1434-MkPaD |
| ) | |
| ANGELO ANTHONY ROMANO and ) | Bk. No.   09-23446 |
| SHARON MARIE ROMANO, ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| RICHARDSON & RICHARDSON, P.C.,) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| ANGELO ANTHONY ROMANO; ) | |
| SHARON MARIE ROMANO, ) | |
| ) | |
| Appellees. ) | |
| _____) | |

Submitted Without Oral Argument
On May 2, 2012[**]

Filed - May 7, 2012

Appeal From The United States Bankruptcy Court
for the District of Arizona

Honorable Charles G. Case, II, Bankruptcy Judge, Presiding

Appearances:    William Richardson of Richardson & Richardson,
P.C. on brief for Appellant; Appellees Angelo
Romano and Sharon Romano, pro se, on brief.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]On March 6, 2012, the Panel unanimously determined that oral argument was unnecessary and ordered that this appeal would be taken under submission on the briefs and on the record on appeal.

Before:  MARKELL, PAPPAS and DUNN, Bankruptcy Judges.

**INTRODUCTION**

Richardson & Richardson, P.C. ("Richardson")[1] appeals both the bankruptcy court's order on Richardson's second and final fee application and the bankruptcy court's order denying Richardson's motion under Rule 9023[2] made with respect to the court's order on fees.

We AFFIRM.

**FACTS**

Angelo and Sharon Romano ("Romanos") owned and operated a trucking business.  The Romanos borrowed money from a hard money lender, West Fourth Avenue, LLC ("Fourth Avenue"), and in exchange gave Fourth Avenue a deed of trust on the real property they used in operating their trucking business.  The trucking business began experiencing financial difficulties, and the Romanos advised Fourth Avenue that they would not be able to repay the loan on its due date.  The Romanos and Fourth Avenue engaged in loan modification negotiations, but those negotiations

---

[1]While the law firm is the nominal appellant herein, William Richardson acted on behalf of the Richardson law firm in all matters relevant to this appeal.  Accordingly, all references in this memorandum to Richardson apply both to the law firm and to William Richardson.  For ease of reference, this Panel will refer to Richardson herein as "he" or "him" and in the possessive as "his".

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  All Civil Rule references are to the Federal Rules of Civil Procedure.

2

broke down, and Fourth Avenue commenced foreclosure proceedings. The Romanos thereafter filed their chapter 11 bankruptcy case on September 22, 2009.

The Romanos hired Richardson to file their bankruptcy case, to represent them in that case, and to sue Fourth Avenue for lender liability. The bankruptcy court entered an order approving Richardson's employment on October 2, 2009.[3]

Richardson filed his first fee application in February 2011. The first fee application sought roughly $44,000 in fees and $1,000 in costs. Richardson also filed a certificate of no objection, and by order entered March 15, 2011, the court granted the fees on an interim basis. Soon thereafter, Richardson filed

---

[3]As part of his employment application, Richardson included as an exhibit a copy of a fee agreement between himself and the Romanos, which the parties all signed in September 2009. Among other terms, the fee agreement required the Romanos to pay $5,000 as an earned upon receipt flat fee retainer, which would cover Richardson's preparation of the petition, schedules, statement of financial affairs, and his initial meetings with the United States Trustee and the first meeting of creditors. But in addition to the initial $5,000 payment, the fee agreement required payment of "an additional $30,000 in unencumbered funds as a condition of our representation." Nothing in the record indicates that the Romanos ever paid this $30,000; indeed, Ms. Romano testified that she thought that the $30,000 amount, when combined with the $5,000 actually paid, was Richardson's estimate of total fees.

While this fee agreement term does not directly affect our analysis or the resolution of this appeal, we nonetheless note that the term did not specify and left completely open when and from what source the Romanos were expected to pay the additional $30,000 – a significant issue considering that the Romanos were about to become Chapter 11 debtors and that all of their property and future income would become property of the estate. § 1115. This confusion causes us to question the wisdom and propriety of such payment terms. As shown by these facts, they have the potential to engender confusion, disputes and adverse interests, especially when the timing and source of payment is unspecified.

3

a motion to withdraw as counsel for the Romanos, and the bankruptcy court granted the withdrawal motion on April 7, 2011. The Romanos did not file an objection to either the first fee application or to the withdrawal motion.

In April 2011, Richardson filed his second and final fee application seeking roughly $8,000 more in fees and $250 more in costs. By this time, the Romanos already had paid Richardson $21,339. That amount consisted of $6,339 paid prepetition and $15,000 paid postpetition.[4]

The Romanos filed an objection to Richardson's second and final fee application. In addition to their complaints about specific categories of services, discussed below, the Romanos generally complained that Richardson did not adequately communicate with them regarding the services for which he was billing them. As the Romanos put it on the first page of their objection:

> Initially, [Richardson] sent his first bill seven months after the appointment of counsel. In the 18 months with Richardson . . . 3 bills were received. The first bill, May 2010, I had objections to some fees, which were discussed with [Richardson], [but] we never received a revised statement in which [Richardson] said he removed my disputed fees. The second and third billing billed, February and March 2011, there was a disagreement with some fees[;] these have not been [previously] noted because we have parted ways, and haven't had the opportunity to address them without objecting to his fees through the courts. I had requested bills and updates numerous times. We have paid in payments over the 18 months, $15,500, without knowing what we were paying for. We paid because [Richardson] always threatened us with his withdrawal unless he received payment.

---

[4]The Romanos assert that they paid $15,500 postpetition, but the $500 discrepancy is not material to our analysis and resolution of this appeal.

Fee Objection (April 20, 2011) at p. 1 (emphasis added). The Romanos also generally questioned the effectiveness of Richardson's representation. Even though they had filed a chapter 11 bankruptcy case, they pointed out that their bankruptcy case had functioned more like a chapter 7 case, in that they had lost by repossession or foreclosure a number of items of personal and real property as a result of following Richardson's advice and utilizing his services.[5]

The Romanos filed an amended objection in May 2011. In the amended objection, the Romanos emphasized that they did not file an objection to Richardson's first fee application because Richardson did not make clear to them that such an objection was necessary to contest his fees.

Richardson filed a reply in response to the Romanos' objection. Richardson asserted that he had explained to the

---

[5]The Romanos listed the following items of property as lost to foreclosure or repossession during their bankruptcy case:

    Building on one acre of land[;]
    Residential Rental Property on half an acre[;]
    One acre of vacant land[;]
    Boat[;]
    Jet skies [sic][;]
    Ford Truck[;]
    Still pending the **possible loss [of] our home**[.]

Fee Objection (April 20, 2011) at p. 5 (emphasis in original). On this record, it is impossible for this Panel to tell with certainty whether Richardson's advice and services limited or delayed the loss of the Romanos' personal and business property, or whether the Romanos would have lost the subject property regardless of Richardson's advice and services. The bankruptcy court did not make any findings on these issues. In any event, our analysis and resolution of this appeal does not turn on these issues.

Romanos how the fee application process worked, so the Romanos should not be allowed to attack fees requested and approved as part of his first interim fee application by way of their objection to his second and final fee application.[6] Richardson further claimed: (1) that many of the Romanos' objections were not specific enough to be sustained, and (2) his fees should not be disallowed solely because the Romanos had sustained some losses in their bankruptcy case.

The Romanos' objection also disputed specific categories of services. The categories challenged and the amounts Richardson sought for each challenged category were as follows:

| | |
|---|---|
| Conversions | $ 300.00 |
| Equilease | $ 360.00 |
| American General (jet ski) | $ 590.00 |
| Citizens (Ford F-150) | $ 277.50 |
| Litton Loan (primary home) | $ 4,520.00 |
| West 4th Ave., LLC (business property) | $18,055.00 |
| US Trustee meeting | $ 1,890.00 |
| Burglary | $ 90.00 |
| Total | $24,052.50 |

Order Re Attorneys Fees (July 28, 2011) p. 2. As to each disputed category, the parties stated their respective positions.[7]

---

[6]Richardson has not pressed this argument on appeal, so it has been waived. In any event, fees approved as part of an interim fee award are subject to the bankruptcy court's further consideration when it reviews the applicant's final fee application. See Leichty v. Neary (In re Strand), 375 F.3d 854, 858 (9th Cir. 2004).

[7]Except for the ruling on Richardson's services relating to the "Litton Loan," Richardson has not challenged on appeal the bankruptcy court's findings on specific billing categories. Nonetheless, we recount the parties' respective positions
(continued...)

6

**Conversions (missed deadlines).**

The United States Trustee twice sought to convert the Romanos' bankruptcy case from chapter 11 to chapter 7, once on January 26, 2010 and again on February 16, 2010. According to the Romanos, the United States Trustee advocated for conversion because Richardson missed deadlines for filing a proposed chapter 11 plan on behalf of the Romanos. Thus the Romanos asserted that Richardson should not receive compensation for responding to the United States Trustee's conversion efforts. In response, Richardson contended: (1) the United States Trustee over-reacted to the missed filing deadlines, and (2) the Romanos caused him to miss the filing deadlines because they did not provide him with sufficient information to file a plan.

**Equilease, American General and Citizens Bank.**

Each of the above-referenced asset-based lenders successfully obtained relief from stay and repossessed personal property belonging to the Romanos or their trucking company. The Romanos claimed that Richardson gave them bad advice regarding the asset-based lenders. According to the Romanos, Richardson advised them that these lenders would not likely repossess the various items of personal property so long as the Romanos kept current on their payments. As it turned out, the lenders did repossess the personal property. Richardson contended that he was not at fault for the lenders' actions. Further, he suggested

[7](...continued)
regarding each disputed category because it sheds light on the attorney-client relationship, the circumstances surrounding Richardson's representation of the Romanos and the extent and nature of communications between Richardson and his clients.

7

that he might have advised the Romanos differently if he had known certain additional facts concerning the collateral, which the Romanos did not disclose. For instance, according to Richardson, the collateral securing Equilease's loan (a "wheel loader") actually was not owned by the Romanos but rather was owned by their trucking business (which did not file bankruptcy). Consequently, the automatic stay did not apply to enjoin Equilease from repossessing the wheel loader. Richardson claimed that the Romanos never told him that the wheel loader was property of the trucking business but rather led Richardson to believe that they personally owned the wheel loader.

**Litton Loan.**

Litton serviced the loan secured by a deed of trust on the Romanos' home. The Romanos complained that Richardson incorrectly advised them before they filed bankruptcy that they would be able to continue working with Litton on a loan modification after they filed bankruptcy, but that was not the case. After the Romanos filed bankruptcy, Litton canceled the loan modification, and the Romanos ended up having to make adequate protection payments of over $6,000 per month in the hopes that a new loan modification could be negotiated. According to the Romanos, Richardson thereafter failed to follow through on loan modification negotiations he commenced with Litton, and ultimately the Romanos needed to pursue the loan modification negotiations themselves.

The Romanos further complained that Richardson advised them that the Litton Loan could be crammed down in bankruptcy, which ultimately turned out to be wrong. Richardson countered that it

8

was not his fault the court rejected his cramdown theory. Further, Richardson insisted that he did what he could to negotiate a loan modification but that ultimately the parties mutually agreed that the Romanos should directly handle the negotiations.

**Burglary.**

The Romanos' trucking business was burglarized during the bankruptcy case. The Romanos claimed that the burglary had no relevance to their bankruptcy case, so Richardson should not have charged them for any services in relation thereto. However, Richardson countered that the burglary had the potential to impact the Romanos' income and therefore their ability to propose a confirmable plan. Accordingly, Richardson asserted that he was entitled to be compensated for the time he spent considering the potential impact of the burglary on the Romanos' bankruptcy case.

**Reporting requirements.**

The bankruptcy court ordered Richardson to meet with the United States Trustee to discuss whether the Romanos' operating reports complied with United States Trustee guidelines. The Romanos claimed that the fees associated with this meeting charged by Richardson should not be compensated because: (1) Richardson gave the Romanos the wrong forms to fill out; and (2) Richardson initially agreed that the Romanos could meet with the United States Trustee by themselves, without Richardson attending, because the Romanos had been filling out the reports without Richardson's involvement or assistance, but that Richardson ended up attending notwithstanding his prior agreement that he would not attend. On the other hand, Richardson

9

contended that he felt compelled to attend the meeting because the court had specifically directed him to attend.

**Dispute with Fourth Avenue.**

By far the largest and most important category of services challenged (over $18,000 of services) related to the dispute between the Romanos and Fourth Avenue. Indeed, the dispute with Fourth Avenue was both the impetus for and focal point of the Romanos' bankruptcy case. The Romanos claimed that Richardson's negotiations with Fourth Avenue were ineffective. According to the Romanos, Richardson negotiated for a loan modification that the Romanos could not afford to pay, even though they had told Richardson that they could not afford to pay it. The Romanos further claimed that Richardson pressed them to settle with Fourth Avenue even though they wanted to litigate their claims against Fourth Avenue. On the other hand, Richardson asserted that the negotiations with Fourth Avenue failed because the Romanos made inconsistent and unreasonable demands. According to Richardson, at times the Romanos indicated that the most important aspect of their dispute with Fourth Avenue was to ensure that they could retain the real property on which they operated their trucking business. Fourth Avenue's loan was secured by a deed of trust on that property. At other times, the Romanos indicated that their priority was to vindicate their rights as against the alleged misconduct of Fourth Avenue and its principal.

**The bankruptcy court's rulings.**

After holding an evidentiary hearing at which both Richardson and Ms. Romano testified, the bankruptcy court issued

its order on Richardson's second and final fee application. The bankruptcy court generally agreed with Richardson regarding the reasonableness of his fees concerning the Fourth Avenue dispute, the burglary and the asset-based lenders. However, as to the other disputed categories of services, the bankruptcy court found some or all of Richardson's fees to be unreasonable. In particular, with respect to the Litton Loan, the bankruptcy court noted that Richardson's cramdown theory was both wrong and ineffectively presented. According to the bankruptcy court, even if Richardson had properly presented his cramdown theory (which he did not), it was settled law in the Ninth Circuit that home loans cannot be modified in chapter 11, citing First Fed. Bank of Cal. v. Weinstein (In re Weinstein), 227 B.R. 284, 290 n.4 (9th Cir. BAP 1998).

Citing its independent duty to investigate the reasonableness of the compensation requested, the bankruptcy court voiced its own concerns with Richardson's fee applications. The bankruptcy court expressed two independent concerns. The court questioned both Richardson's billing practices and his candor with the court. Concerning billing practices, the bankruptcy court criticized Richardson for not sending the Romanos monthly billing statements, and concluded that the Romanos could not have meaningfully authorized Richardson's services without such bills being sent:

> Mr. Richardson testified that, as a sole practitioner, it is his standard operating procedure not to send monthly bills, but when requested to give clients a running billing total verbally. The Court concludes that this is a bad operating procedure. If the client doesn't know how much they are being billed and for what services, how can they approve the fees? Beyond

the lack of approval, Mr. Richardson's policy is indicative of his unreasonable billing judgment which led directly to many of the problems here. If the Debtors had an ongoing knowledge of the time and expense of handling their case, perhaps they would have seen a need to settle or understood the added expense of pursuing the West 4th Avenue matter. Instead, they were left blind as to how much time and money the matter was truly costing them. Based on his lack of communication, the Court concludes that much of Mr. Richardson's services were not authorized by his client and Mr. Richardson exercised unreasonable billing judgment, thus justifying a . . . reduction in fees.

Order Re Attorneys Fees (July 28, 2011) p. 9.

As for Richardson's lack of candor, the bankruptcy court found that Richardson had misled the court. According to the court, Richardson made deceptive statements regarding the Romanos' opportunity to object to his fee applications and regarding billing statements being sent to the Romanos for review and approval before Richardson filed his fee applications. In essence, the bankruptcy court determined that Richardson had misled the court into wrongly believing that Richardson had given the Romanos a meaningful opportunity to review and question Richardson's billings before he filed his fee applications.

Based on the Romanos' objections, the absence of meaningful authorization of Richardson's services, Richardson's unreasonable billing practices, and his lack of candor, the bankruptcy court limited Richardson's fee award to the amount the Romanos already had paid -- $21,339 -- thereby disallowing $31,352 of the total $52,991 Richardson had requested in fees and costs.[8]

---

[8]Of the amount disallowed, less than $6,000 can be attributed directly to the Romanos' objections to specific (continued...)

12

Richardson thereafter filed under Rule 9023[9] a motion for rehearing or, alternately, to alter or amend the judgment or for new trial ("Rule 9023 Motion").  According to Richardson, the bankruptcy court's decision based on its independent concerns denied him due process.  Richardson claimed that, because the court's independent concerns were raised for the first time at the June 8, 2011 evidentiary hearing, the bankruptcy court should have given him an opportunity to present additional argument and evidence, this time specifically addressing the court's concerns regarding authorization of services, billing judgment and candor.

In addition, Richardson disagreed with the bankruptcy court's finding that the Romanos did not authorize his services.  As Richardson put it, Ms. Romano never explicitly testified that his services were unauthorized.  According to Richardson, he could present substantial additional evidence regarding his routine written and oral communications with the Romanos that would demonstrate that they were fully aware of his activities on their behalf and therefore that they had implicitly authorized his services.

Richardson also challenged the bankruptcy court's determination that he should have prepared and delivered to the

---

[8](...continued)
categories of services.  The Romanos objected to categories in which Richardson was seeking in aggregate $24,000 in fees.  However, the court overruled the Romanos' objections in categories totaling over $18,000 in fees.  Put another way, the court disallowed over $25,000 in fees based on its own independent concerns.

[9]Rule 9023 incorporates by reference Civil Rule 59 and makes it applicable in bankruptcy cases.

13

Romanos regular billing statements. Richardson asserted that billing statements are necessarily historical and therefore had no perceptible bearing on authorization of his future services.

Richardson also disagreed with the bankruptcy court's conclusion that he did not exercise reasonable billing judgment. Richardson contended that no statute, rule or guideline specifically requires regular billing statements, and that the frequency of billing statements is beyond the scope of the billing judgment inquiry. As Richardson explained, the inquiry into the fee applicant's billing judgment usually centers on whether and how the applicant exercises his or her discretion to charge for services that are excessive, redundant, unnecessary or otherwise of questionable benefit to the estate.[10]

Richardson also disputed the bankruptcy court's finding that he had misled the court. In essence, Richardson contended that, when considered within the context of all the relevant facts, the following statement made in his first fee application was not misleading: "Applicant has forwarded copies of the attached billing statement to the debtors for their consideration and approval. The debtors have not objected to the fee requested." According to Richardson, the three days between the date he sent his February 2011 billing statement to the Romanos and the date he filed his fee application should have been sufficient for the Romanos to let him know if they had any sort of problem with his fees. Richardson based this belief on one prior experience he

[10]Richardson also claimed that, whenever the Romanos inquired, he would orally advise them of the then-current amount of total fees incurred.

14

had with the Romanos. According to Richardson, the one prior time he sent the Romanos a billing statement, in May 2010, the Romanos responded with their questions and concerns within hours. Accordingly, Richardson explained, it was reasonable for him to expect that the Romanos would do so again in response to his February 2011 billing statement.[11]

Richardson similarly claimed that there was nothing misleading about his statement in his second fee application: "Applicant has forwarded copies of the attached billing statement to the debtors for their consideration and approval." The bankruptcy court concluded that this statement also was deceptive because, once again, the Romanos had no real opportunity to consider or approve Richardson's requested fees before he filed his second fee application.

Richardson admitted in his Rule 9023 Motion that, in light of the deterioration of his relationship with the Romanos and his subsequent withdrawal as counsel, he had expected the Romanos to

---

[11]Richardson also pointed out that he was required to file a separate "notice of no objection" in support of each of his fee applications. Richardson claims that this notice necessarily prevented him from taking unfair advantage of the short time between his sending the February 2011 billing statement to the Romanos and his filing of his first fee application. This Panel disagrees with the underlying assumption implicit in this argument: that the United States Trustee guideline requiring the application to include a statement regarding whether the client has reviewed and approved the applicant's fees is redundant of the separate notice of no objection requirement. The two requirements serve different purposes. The former focuses on whether the client has had a meaningful opportunity to review and approve the fees billed, whereas the latter focuses on whether any party in interest has submitted an objection to the fee application.

15

object to the fees requested in his second and final fee application. Yet his Rule 9023 Motion made no attempt to explain or justify why his second fee application spoke in terms of sending the application to the Romanos for consideration and approval, instead of simply stating the fact that the applicant did not expect the debtors to approve the fees in light of the deterioration of the attorney-client relationship.

Finally, Richardson challenged the bankruptcy court's disallowance of his fees relating to the Litton Loan. Richardson argued that the fees related to his cramdown theory only consisted of one billing entry, so if the court was dissatisfied with his cramdown theory, it simply should have disallowed that single entry.

The bankruptcy court entered an order on September 14, 2011, denying Richardson's Rule 9023 Motion. The bankruptcy court rejected the argument that Richardson was denied due process. In essence, the court determined that its dispositive concerns were fundamental to and subsumed within the basic review a bankruptcy court must undertake with respect to any fee application filed. As a consequence, Richardson's claim that he was caught by surprise was unfounded.

The court also rejected Richardson's contentions regarding his candor. According to the court, it had reviewed the record and had found no manifest error justifying relief under Civil Rule 59.

Finally, the bankruptcy court clarified that it had based its fee application ruling on alternate grounds. On the one hand, it had disallowed Richardson's fees under the standard

16

criteria for reviewing the reasonableness and allowability of fees under § 330(a)(3). On the other hand, as an alternate ground, the court had disallowed the fees "as a sanction for the conduct described."

Richardson timely appealed the bankruptcy court's order on his second and final fee application and its denial of his Rule 9023 Motion.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1.    Did the bankruptcy court abuse its discretion when it disallowed $31,352 of the $52,991 Richardson requested in fees and costs?

2.    Did the bankruptcy court deprive Richardson of due process by not holding a second evidentiary hearing on Richardson's second and final fee application?

3.    Did the bankruptcy court abuse its discretion by disallowing Richardson's fees as a sanction?

4.    Did the bankruptcy court err when it ruled on the reasonableness of Richardson's fees specifically related to the Litton Loan?

5.    Did the bankruptcy court abuse its discretion when it denied Richardson's Rule 9023 Motion?

**STANDARDS OF REVIEW**

"We will not disturb a bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its discretion

17

or erroneously applied the law." In re Strand, 375 F.3d at 857 (citations and internal quotation marks omitted). Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And if the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

Orders denying motions to alter or amend a judgment and motions for new trial also are reviewed for abuse of discretion. First Ave. W. Bldg., LLC v. James (In re OneCast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006); Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001); Clinton v. Deutsche Bank Nat'l Trust Co. (In re Clinton), 449 B.R. 79, 82 (9th Cir. BAP 2011).

Whether notice given in any particular instance was sufficient to satisfy due process concerns is a mixed question of fact and law that this Panel reviews de novo. See Berry v. U.S. Trustee (In re Sustaita), 438 B.R. 198, 207 (9th Cir. BAP 2010) (citing Demos v. Brown (In re Graves), 279 B.R. 266, 270 (9th Cir. BAP 2002)).

**DISCUSSION**

**Disallowance of fees.**

Richardson has not challenged on appeal the bankruptcy

18

court's statement of the applicable legal standard governing fee applications. Moreover, we agree with the bankruptcy court's statement of the relevant law. Citing <u>Garcia v. U.S. Trustee (In re Garcia)</u>, 335 B.R. 717, 724 (9th Cir. BAP 2005), the bankruptcy court identified the following factors it needed to consider when determining the reasonableness of the fees Richardson requested:

> (a) Were the services authorized?
> (b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?
> (c) Are the services adequately documented?
> (d) Are the fees [requested] reasonable, taking into consideration the factors set forth in section 330(a)(3)?
> (e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

<u>Id.</u> (citing <u>Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)</u>, 251 B.R. 103, 108 (9th Cir. BAP 2000), and <u>In re Strand</u>, 375 F.3d at 860).

Because the bankruptcy court identified the correct law to apply, we next consider whether the bankruptcy court's findings of fact, and its application of those findings to the relevant law, were clearly erroneous. <u>See</u> <u>Hinkson</u>, 585 F.3d at 1262. Richardson, as the applicant, had the burden of proof to establish that his fees were reasonable. <u>See</u> <u>Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)</u>, 298 B.R. 392, 402 (9th Cir. BAP 2003), <u>rev'd in part on other grounds</u>, 468 F.3d 592 (9th Cir. 2006); <u>see also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983) ("Fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.").

19

Richardson contends on appeal that the bankruptcy court improperly imposed a requirement of regular billing statements, which are not required by statute, case law or United States Trustee guideline. According to Richardson, the bankruptcy court's imposition of this improper requirement directly led to its findings that the Romanos did not authorize his services and that Richardson's billing practices (and hence his billing judgement) were unreasonable.

This Panel agrees with Richardson that the bankruptcy court focused on his failure to prepare and deliver to the Romanos regular billing statements. But we disagree with Richardson's characterization of the court's ruling as imposing an absolute requirement on bankruptcy counsel to present debtors with regular billing statements if they want to receive compensation for their services. Based on our review of the record, this would not be a fair reading of the bankruptcy court's ruling. Indeed, if the bankruptcy court had imposed such a requirement, this Panel would have expected the bankruptcy court to deny all of Richardson's fees. But that was not what the bankruptcy court did.

Rather, the court was concerned about the extent and quality of Richardson's communication with the Romanos and whether the Romanos had adequate information on an ongoing basis regarding the cost of services Richardson already had performed to enable them to give informed consent to Richardson's further services. By not providing the Romanos with regular billing statements, Richardson assumed the risk that he would fail to prove by other means that the Romanos gave informed consent for him to render further services.

Richardson also contends that the Romanos implicitly authorized his services by not questioning the services at the time he performed them. Richardson points out that, because he regularly communicated with them regarding their case, the Romanos generally were aware of his services but that they generally did not question the services as he performed them.

But in so arguing, Richardson demonstrates that he has missed the key point of the bankruptcy court's authorization finding: that any such authorization (implicit or otherwise) was meaningless unless it was based on adequate information.

The bankruptcy court found on the evidence presented that the Romanos did not have adequate information regarding the cost of services previously rendered to authorize further services. Based on the same reasoning, the bankruptcy court also found that both Richardson's billing practices and his billing judgment were unreasonable, because under the circumstances of this case, Richardson's billing practices did not provide the Romanos with adequate information regarding the cost of services he was performing on an ongoing basis.

While Richardson disagrees with these findings, the record contains sufficient evidence to support them. It is undisputed that, during the eighteen months he represented the Romanos, Richardson only prepared and delivered three billing statements, the first in May 2010, the second just before he filed his first fee application in February 2011, and the third just before he filed his second and final fee application in April 2011. In addition, the Romanos' objection and Ms. Romano's testimony reflected that the Romanos (who were relatively unsophisticated

consumers of legal services) had requested additional billing statements from Richardson and had complained to him that they did not know what services they were paying for. On these facts, this Panel cannot say that the bankruptcy court's authorization finding and billing judgment finding were clearly erroneous. In other words, in the parlance of <u>Hinkson</u>, we cannot say that the bankruptcy court's findings were "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." <u>Hinkson</u>, 585 F.3d at 1262.

In disallowing a portion of Richardson's fees, the bankruptcy court also took into account the misleading nature of some of Richardson's statements in his first and second fee application. The misleading statement from the first fee application was:

> Applicant has forwarded copies of the attached billing statement to the debtors for their consideration and approval. The debtors have not objected to the fee requested.

And the misleading statement from the second fee application was:

> Applicant has forwarded copies of the attached billing statement to the debtors for their consideration and approval.

Richardson has admitted that he made these two statements on account of the provision in the United States Trustee Guidelines ("Guidelines") directing fee applicants to include a statement in the fee application regarding "Whether the person on whose behalf the applicant is employed <u>has been given the opportunity to review the application</u> and whether that person has approved the requested amount." 28 C.F.R. pt. 58, app. A, at ¶(b)(1)(v) (emphasis added).

22

In addition, Richardson has not challenged on appeal the court's findings regarding the time elapsed between his sending to the Romanos his billing statements and the filing of his fee applications. As the court found, Richardson sent the Romanos his February 2011 billing statement on February 14, 2011, and filed his first fee application three days later, on February 17, 2011. The court further found that Richardson sent his April 2011 billing statement to the Romanos on April 4, 2011, and filed his second and final fee application on that same day, less than 40 minutes later.

Richardson has offered various arguments on appeal why the bankruptcy court should not have construed his Guideline-related statements as misleading. With respect to the first fee application, he claimed that Ms. Romano responded almost immediately to his May 2010 billing statement, so it was reasonable for him to conclude that three days was enough time for the Romanos to let him know whether they objected to his February 2011 billing statement. In addition, he represented that he orally told Ms. Romano that he needed a prompt response from her on the February 2011 billing statement, as he intended to file a fee application in the near future.

As for the second fee application, he claims that he expected the Romanos to object because of the deterioration of his professional relationship with the Romanos. Accordingly, he asserted, it was unnecessary or futile for him to wait for a response from them.

As to both fee applications, Richardson claims he altered the Guideline's standard language so as to avoid stating an

23

outright falsehood to the court.

But Richardson's arguments largely miss the point. The focus of the Guideline (on which Richardson based his statements) is the client's opportunity to review and approve the fees requested. When it read Richardson's statements, the bankruptcy court construed them to mean that Richardson, in both instances, had given the Romanos a meaningful opportunity to review both billing statements before he filed his fee applications. The court's construction of the statements was reasonable in light of the focus of the Guideline. However, the court later learned that Richardson gave the Romanos roughly two days to review the February 2011 billing statement – covering roughly seventeen months of services – and virtually no time at all to review the second billing statement.

We perceive no error in the bankruptcy court's construction of Richardson's statements or its determination, under the facts presented, that Richardson did not give the Romanos a meaningful opportunity to review his billing statements before he filed his fee applications. Indeed, if Richardson had been striving for candor with the bankruptcy court regarding the Romanos' opportunity to review his billing statements, he easily could have stated precisely how much time he gave the Romanos to respond. Furthermore, a completely candid statement from Richardson likely would have advised the court, especially with respect to the second fee application, that he expected the Romanos to object to the fees requested (as Richardson later admitted) in light of the breakdown of the attorney-client relationship. Instead, he offered statements that attempted to

24

sound as much like the literal wording of the Guideline without addressing the spirit of the Guideline – to advise the court regarding the client's opportunity to review and approve his fees.

This Panel cannot conclude under these circumstances that the bankruptcy court's finding that Richardson made misleading statements was clearly erroneous. Nor did the court err in taking into account the misleading statements when it determined the reasonableness of Richardson's fees. In our view, the statements and Richardson's efforts to give his clients a reasonable opportunity to review and approve the fees requested go directly to the nature and extent of his billing judgment, one of the factors this Panel identified in Garcia and Mednet as pertinent to the determination of the reasonableness of fees requested under § 330(a).

**Due Process.**

Richardson complains that he did not have advance notice of the bankruptcy court's concerns, so he could not adequately address them at the June 8, 2011 evidentiary hearing.

Section 330(a)(1) authorizes the bankruptcy court after notice and a hearing to grant compensation to estate professionals. What constitutes adequate notice and opportunity for hearing is a flexible concept that depends upon the circumstances of the particular case. Tennant v. Rojas (In re Tennant), 318 B.R. 860, 870-71 (9th Cir. BAP 2004). As the Supreme Court has explained:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the

25

> circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)(citations omitted); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) ("[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.").

In this case, the court conducted a full evidentiary hearing to decide whether and to what extent Richardson's fee application should be granted. As with hearings on most fee applications, the ultimate question to be answered was the reasonableness of the fees requested. Richardson has conceded that he had the burden of proof to establish the reasonableness of his fees, and that Garcia and Mednet set forth the relevant factors for the court to consider. Yet citing In re Eliapo, 468 F.3d at 602-03, he claims that due process required the court to give him advance notice of the specific concerns it had regarding the reasonableness of his fees. According to Richardson, the bankruptcy court should have let him know in advance of the June 8, 2011 evidentiary hearing that, in the court's view, Richardson had not adequately established through his papers and testimony that the Romanos had authorized his services and that he had exercised reasonable billing judgment.

26

But Richardson's argument makes no sense. In essence, Richardson contends that the bankruptcy court was required to let him know in advance of the evidentiary hearing whether he had presented sufficient evidence to prevail and, if not, on which reasonableness factors his presentation was insufficient. Put another way, Richardson claims that the bankruptcy court should have given him advance notice of the reasoning behind its ruling so that he could counter that reasoning with additional evidence. We know of no authority construing the requirements of due process so broadly, nor has Richardson pointed us to any.

Furthermore, Richardson cannot deny that, in advance of the June 8, 2011 hearing, the Romanos had objected to his fee application, in part, because they claimed he had not given them adequate information regarding the costs of the services he was rendering. As previously stated, the Romanos complained on the first page of their opposition filed on April 20, 2011 that they had paid over $15,000 to Richardson over the course of his eighteen months representing them "without knowing what we were paying for" even though they "had requested bills and updates numerous times." Fee Objection (April 20, 2011) at p. 1.

In short, the adequacy of the information Richardson gave the Romanos regarding his fees – the precise question on which the court ultimately focused in rendering its authorization finding and its billing judgment finding – was raised by the Romanos well before the June 8, 2011 evidentiary hearing. Thus, in hindsight, Richardson's failure to address that question more thoroughly may have turned out to be a tactical error on his part, but it was not the result of a failure of due process.

27

Eliapo does not help Richardson's argument. In Eliapo, the bankruptcy court denied some of the fees sought by chapter 13 debtor's counsel even though no one objected to the fees and the bankruptcy court held no hearing at all on the reasonableness of the fees. In re Eliapo, 468 F.3d at 595. Eliapo held that the bankruptcy court there should have given some advance notice and some opportunity for hearing before it sua sponte disallowed some of the fees requested by the debtor's counsel. Id. at 602. At the same time, Eliapo emphasized that the bankruptcy court had broad discretion in deciding what amount of notice and what form of hearing was sufficient under the particular circumstances presented.

> We emphasize that the notice-and-hearing definition in
> § 102(1) is flexible and sensitive to context. . . . So
> long as fair notice and an opportunity to be heard are
> afforded, the bankruptcy court has considerable freedom
> to fashion procedures for notice and a hearing that are
> "appropriate in the particular circumstances."

Id. at 603 (quoting 11 U.S.C. § 102(1)(A)).

In this case, as set forth above, the Romanos raised in their objection filed on April 20, 2011, the adequacy of the information Richardson had given them regarding his fees – the precise question on which the bankruptcy court focused when it made its authorization finding and its billing judgment finding. Under these circumstances, we simply cannot say that the bankruptcy court violated Richardson's due process rights by not setting a second evidentiary hearing after holding a full evidentiary hearing on June 8, 2011.

Richardson also claims that he should have been given a second evidentiary hearing so that he could present evidence

28

showing that his statements to the court regarding the Romanos' opportunity to review and approve his fees were not misleading.

However, Richardson cannot establish a violation of his due process rights without first establishing that he was prejudiced by the alleged denial of due process.  When an appellant offers no evidence of prejudice, any deficiency in providing due process to the appellant is harmless.  <u>Rosson v. Fitzgerald (In re Rosson)</u>, 545 F.3d 764, 776 (9th Cir. 2008); <u>City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Corp. (In re City Equities Anaheim, Ltd.)</u>, 22 F.3d 954, 959 (9th Cir. 1994).  <u>See also</u> <u>People of State of Ill. ex rel. Hartigan v. Peters</u>, 871 F.2d 1336, 1340 (7th Cir. 1989) ("As other courts have suggested, one circumstance we may consider in evaluating the sufficiency of notice is whether the alleged inadequacies in the notice prejudiced the appellant."); <u>United Food & Commercial Workers Union v. Alpha Beta Co.</u>, 736 F.2d 1371, 1382 (9th Cir. 1984) (summons which specified incorrect amount of time for filing answer did not require dismissal of lawsuit absent showing of prejudice).

Here, Richardson claims that, if given the opportunity, he could have shown that the statements he made in his fee applications regarding the Romanos' opportunity to review and approve his fees were not actually misleading.  But we already have discussed above Richardson's explanations and arguments, and none of them would have altered the undisputed dispositive facts that led the bankruptcy court to find Richardson's statements misleading.  Consequently, because Richardson has not and cannot establish any prejudice, his due process argument necessarily

29

fails.[12]

**Fees related to the Litton Loan.**

The bankruptcy court found that "much" of the fees Richardson incurred with respect to the Litton Loan were unnecessary and hence unreasonable. The court particularly noted that Richardson had presented a cramdown theory that had been discredited in the Ninth Circuit, and that he had presented this theory in an ineffective manner. At the same time, the court found that the fees Richardson incurred negotiating with Litton were "not unnecessary."

On appeal, Richardson has argued that because a tiny fraction of the fees in this category actually were attributable to his cramdown theory and most of the fees in this category actually were attributable to his negotiations with Litton, "the court abused its discretion in denying all fees associated with the Litton matter." Appellant's Opening Brief (Dec. 6, 2011) at pp. 21-22.

However, in making this argument, Richardson mischaracterizes the bankruptcy court's ruling. Contrary to Richardson's argument, the bankruptcy court never ruled that it was disallowing a specific amount of fees attributable to the Litton Loan. Rather, the bankruptcy court exercised its discretion to determine, based on <u>all</u> of its findings, that it

[12]As set forth above, the bankruptcy court alternately disallowed Richardson's fees as a sanction. In light of our upholding the bankruptcy court's disallowance of Richardson's fees based on their unreasonableness and our rejection of Richardson's due process argument, we do not need to review the bankruptcy court's alternate ground for disallowing Richardson's fees.

was appropriate to limit Richardson's total fee award to the amount the Romanos already had paid him.

Richardson points us to nothing in the record from which we could conclude that the bankruptcy court only took into account its finding regarding Richardson's cramdown theory and ignored its finding regarding Richardson's negotiations with Litton.

Moreover, Richardson did not challenge either in the bankruptcy court or on appeal the bankruptcy court's calculation of the dollar amount of his fee award, so he has waived that issue.  See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002); Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (table) (9th Cir. 1999).

The Ninth Circuit Court of Appeals has held that trial courts may rely upon their own expertise in determining the reasonableness of fees and that trial courts are entitled to deference in making an expert assessment of the necessity of services provided.  See Ingram v. Oroudjian, 647 F.3d 925, 927-28 (9th Cir. 2011).

Put another way, under the abuse of discretion standard, unless an appellant demonstrates that the bankruptcy court's reasonableness determination was illogical, implausible or without support in inferences that may be drawn from facts in the record, we cannot and will not overturn the bankruptcy court's expert assessment of the necessity and reasonableness of the appellant's fees.  Here, Richardson's reference to the court's statement regarding his cramdown theory does not by itself demonstrate any of the above-referenced criteria that would

permit us to overturn the court's reasonableness finding. Richardson has not pointed us to any other grounds for overturning this finding, so we will not disturb it.

**Rule 9023 Motion.**

In order to obtain relief under Rule 9023, Richardson needed to demonstrate: "(1) manifest error of fact; (2) manifest error of law; or (3) newly discovered evidence." Hansen v. Moore (In re Hansen), 368 B.R. 868, 878 (9th Cir. BAP 2007).

Richardson's Rule 9023 argument raises the same points he already raised in support of his other arguments on appeal. In particular, he has asserted in support of his Rule 9023 argument: (1) that the Romanos had adequate information regarding the cost of his services on an ongoing basis, and (2) that no statute, rule, case law or Guideline required him to give the Romanos regular billing statements as a prerequisite to his claiming compensation under § 330(a).

This Panel has considered and rejected these same assertions in addressing Richardson's claim that the bankruptcy court erroneously disallowed his fees on reasonableness grounds. For the same reasons we rejected these assertions, they also are insufficient to establish that the bankruptcy court abused its discretion in denying Richardson's Rule 9023 Motion.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order on Richardson's second and final fee application and its order denying Richardson's Rule 9023 Motion.