**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: FILIAE ELIAPO; In re: JUDY
ELIAPO,

                *Debtors,*

LAW OFFICES OF DAVID A. BOONE,
                *Appellant,*

     v.

DEVIN DERHAM-BURK; U.S.
TRUSTEE,

                *Appellees.*

No. 03-16814

BAP No.
NC-02-01450-
MaRyB

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brandt, Ryan, and Marlar, Bankruptcy Judges, Presiding

Argued and Submitted
March 16, 2006—San Francisco, California

Filed November 13, 2006

Before: Pamela Ann Rymer, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge William A. Fletcher

18493

**COUNSEL**

David A. Boone, Law Offices of David A. Boone, San Jose, California, for the appellant.

Devin Derham-Burk, United States Trustee, Office of the U.S. Trustee, San Jose, California, for the appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

This appeal concerns the appropriate standards and procedures for awarding attorney's fees in connection with Chapter 13 bankruptcy petitions. The Bankruptcy Court for the Northern District of California has established three means by which a debtor's attorney may obtain a fee award in a Chapter 13 case. The attorney may (1) submit a fee application under "no-look" guidelines that establish presumptive fees for a "basic case" and specified variations thereon, (2) submit a detailed fee application based on the hours actually spent on the case, or (3) first submit a no-look application and later submit a detailed application seeking additional fees based on the hours actually spent.

In this case, Appellant Law Offices of David A. Boone ("Boone") initially submitted a fee application under the no-look guidelines. Boone later submitted a second fee application in which he sought additional fees based on the hours actually spent. In ruling on the second application, the bankruptcy court allowed a fee for a "basic case" based on the no-look guidelines and some additional fees according to the hours actually spent, but it refused to allow the full amount of fees requested. The BAP affirmed. We affirm in part, reverse in part, and remand.

## I.  Factual Background

On January 18, 2001, Filiae and Judy Eliapo ("the Eliapos") hired Boone to assist them in filing for bankruptcy. On January 22, Boone filed a Chapter 13 petition on their

behalf. A plan was first filed on February 2. The plan was amended and re-filed on April 10. The plan was amended a second time and re-filed on April 18.

On May 30, Boone signed a one-page application for attorney's fees under the bankruptcy court's no-look guidelines, reproduced *infra*, in the amount of $2,350. This figure included $1,400 for the "basic case," $750 because the case "involve[d] real property claims," and $200 because the case "involve[d] vehicle loans or leases." The bankruptcy court approved the Eliapos' second amended plan on June 21 and approved Boone's $2,350 no-look fee application on the same day.

On February 27, 2002, Boone filed a second fee application requesting an additional $1,248. This application included time sheets describing the tasks performed and hours spent by Boone. Boone had already been provided compensation, pursuant to his no-look application, for some of the work described in the time sheets. Boone did not place under separate headings the work he had performed on the "basic case," or the work involving "vehicle loans or leases" or "real property claims." Most, perhaps all, of the work for which Boone sought additional compensation was performed after the date on which the no-look fees were awarded. The bankruptcy court initially scheduled a hearing on the second application, but took the matter under submission when no objection to the application was filed.

The bankruptcy court ruled on Boone's second fee application on August 2, 2002, without a hearing. The court divided the tasks performed by Boone into two categories. The first category was compensation for work involving "normal preparation of the petition, schedules and statement of affairs and the moving of the case to confirmation." *In re Eliapo (Eliapo I)*, No. 01 50227-[J]RG, 2002 WL 31185824, at *1 (Bankr. N.D. Cal., August 2, 2002). The court concluded that Boone was seeking $2,254 for this work, based on 9.6 hours of work.

The court wrote that, absent "extraordinary circumstances," compensation for this work should not exceed the $1,400 Boone had already been paid for the "basic case" under the no-look guidelines. The court held that there were no extraordinary circumstances, and it refused to award additional fees beyond the $1,400 already awarded.

Pursuant to his no-look application, Boone had been awarded $200 for work involving "vehicle loans or leases." Even though Boone did not list work under that heading in his second application, it is apparent from the confirmed plan and the second fee application that Boone had indeed done such work. The confirmed plan lists a secured claim by "Americredit" with "value of collateral" of $20,618, for which a minimum of $50 per month is to be paid. Schedule B of the plan lists a 2000 Dodge Durango with a "current market value" of $20,618, and Schedule D lists Americredit as a secured creditor with a claim of $30,179.74. Boone's second fee application lists various tasks pertaining directly to this secured claim: "Prepare letter to Americredit" for .1 of an hour on 2/7/2001; "Receive and Review correspondence from Americredit regarding value of collateral (.1); Telephone Call to Dawn at Americredit regarding same (.2)" on 3/14/2001; and "Telephone call to Dawn . . . regarding value of Dodge Durango; left message" on 3/19/2001 for .1 of an hour, "No Charge." The application lists other tasks, such as "Prepare schedules and Statement of Financial Affairs" for 1.4 hours, that obviously include work relating to the secured loan on the vehicle. However, in ruling on the second application, the bankruptcy court wrote, "The vehicle loan is $30,179 and encumbers a 2000 Dodge Durango. There is no suggestion of a problem in this area." *Eliapo I*, at *1. The court added nothing to the $1,400 "basic case" guideline fee to take into account Boone's work involving this vehicle loan.

The second category of tasks Boone performed involved motions for relief from the automatic stay brought by the first and second mortgage holders. Pursuant to his no-look applica-

tion, Boone had been awarded an additional $750 for work involving "real property claims." The court concluded that Boone was seeking $1,219 for this work, based on 5.2 hours of work related to these motions. The court wrote that this work "appears suspect." However, "given the debtor problems with their mortgage payments," the court declined to "second guess" the time spent on these motions. *Id.* It therefore awarded the full $1,219 for the work related to motions for relief from the automatic stay.

The court awarded a total attorney's fee of $2,744 based on the second application — $1,400 for the basic case, an additional $1,219 for work on the stay motions, and an additional $125 for preparation of the second application. The court did not award the $200 guideline amount for work involving "vehicle loans or leases." Because Boone had already been awarded $2,350 based on his no-look application, the net award based on his second application was $394. This amount was $854 less than the net amount Boone had requested in the second application.

The Bankruptcy Appellate Panel ("BAP") affirmed the decision of the bankruptcy court. *Law Offices of David A. Boone v. Derham-Burk* (*In re Eliapo*) (*Eliapo II*), 298 B.R. 392 (9th Cir. BAP 2003). Boone now appeals to this court, listing numerous questions in his brief. The questions overlap to a considerable extent and may be reduced to four: First, do the no-look presumptive fee guidelines violate 11 U.S.C. § 330? Second, did the bankruptcy court's criterion for awarding additional fees beyond the no-look presumptive fees violate § 330? Third, did the bankruptcy court abuse its discretion in ruling on Boone's second application without a hearing? Fourth, did the bankruptcy court abuse its discretion in refusing to give Boone $200 credit for having performed work involving "vehicle loans or leases"? All but the fourth question were raised in Boone's appeal to the BAP.[1]

---

[1]Neither the United States trustee nor the Chapter 13 trustee filed briefs in this court or the BAP. *See Eliapo II*, 298 B.R. at 401 n.14. It would have been of great assistance to us and the BAP if such briefs had been filed.

## II.   Standard of Review

We independently review the bankruptcy court's rulings on appeal from the BAP. *See Salazar v. McDonald* (*In re Salazar*), 430 F.3d 992, 994 (9th Cir. 2005); *Miller v. Cardinale* (*In re DeVille*), 361 F.3d 539, 547 (9th Cir. 2004). "Because we are in as good a position as the BAP to review bankruptcy court rulings, we independently examine the bankruptcy court's decision, reviewing the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error." *United States v. Hatton* (*In re Hatton*), 220 F.3d 1057, 1059 (9th Cir. 2000); *see also Am. Law Ctr. PC v. Stanley* (*In re Jastrem*), 253 F.3d 438, 441 (9th Cir. 2001). We will not disturb a bankruptcy court's award of attorney's fees "absent an abuse of discretion or an erroneous application of the law." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985); *see also Dawson v. Wash. Mutual Bank* (*In re Dawson*), 390 F.3d 1139, 1145 (9th Cir. 2004). That is, we will not reverse an award of fees unless we have a definite and firm conviction that the bankruptcy court committed clear error in the conclusion it reached after weighing all of the relevant factors.

## III.   Discussion

**[1]** A bankruptcy court in a Chapter 13 case "may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). The "other factors" are listed in § 330(a)(3). At the date of Boone's fee application, that section provided:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of [the case];

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C.A. § 330(a)(3)(A)-(E) (West 2004).[2] The bankruptcy court has *sua sponte* authority to "award compensation that is less than the amount of compensation that is requested." *Id.* § 330(a)(2).

[2] Local Bankruptcy Rule 9029-1 for the Northern District of California allows the bankruptcy court to adopt guidelines for attorney's fees. The local rule provides, in pertinent part,

> The Judges of the Bankruptcy Court or any division thereof may adopt, and as needed revise, guidelines concerning the allowance and disallowance of professional fees and expense reimbursement and the

---

[2]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 has now added to the list of considerations whether the professional is "board certified or otherwise has demonstrated skill and experience in the bankruptcy field." *See* 11 U.S.C.A. § 330(a)(3) (West 2004 & Supp. 2006).

contents and format of applications therefor filed pursuant to 11 U.S.C. §§ 330(a) and 331 and Fed. R. Bankr. P. 2016(a) . . . . Although referenced herein, such guidelines are not intended to be local rules, and shall not have the force and effect thereof.

Bankr. N.D. Cal. R. 9029-1. As authorized by Local Rule 9029-1, bankruptcy judges for the Northern District have adopted guidelines establishing presumptive fees for routine services in Chapter 13 cases. The guidelines in effect when Boone represented the Eliapos provided as follows:[3]

A.   FEE APPLICATIONS.

1.   Counsel may receive an order approving fees up to the amounts set forth in Paragraph 2 without filing a detailed application if:

a. Counsel has filed and served the Chapter 13 Trustee with an executed copy of the "Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys," copies of which are available in the Clerk's Office and in the Office of the Chapter 13 Trustee;

b. Counsel has accepted no more than $500 as a retainer in the case, unless counsel thereafter applies for and receives court approval of a larger advance retainer; and

---

[3]The current guidelines may be found at http://www.canb.uscourts.gov/ (follow "Guidelines" hyperlink; then follow "San Jose Division" hyperlink to pdf). The current guidelines have increased the presumptive no-look fee for a "basic case" to $1,800.

c. No objection to the requested fees has been raised.

2. The maximum fee which can be approved through the procedure described in Paragraph 1 is:

$1400 for the basic case; and an additional

$750 if the case involves real property claims;

$400 if the case involves state or federal tax claims;

$200 if the case involves vehicle loans or leases;

$1200 if the case involves an operating business;

$300 if the case involves support arrears claims; and

$300 if the case involves student loans.

3. If an executed copy of the "Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys" is not filed, counsel has accepted more than $500 without court approval, or there is an objection, an order will not be entered automatically pursuant to these Guidelines.

4. If counsel elects to be paid other than pursuant to these Guidelines, all fees including the retainer shall be approved by the court whether or not the fees are payable through the Chapter 13 Trustee's Office and whether or not fees are paid for

> services in connection with the Chapter 13 case.
>
> 5. If counsel applies for fees, counsel shall comply with Rules 2002 and 2016 of the Federal Rules of Bankruptcy Procedure as well as the "Guidelines for Compensation and Expense Reimbursement of Professionals" adopted by the Bankruptcy Judges of the Northern District of California.
>
> 6. On its own motion or the motion of any party in interest, the court may order a hearing to review any fee paid or unpaid.

The "Rights and Responsibilities" form, referred to in paragraph (A)(1)(a), *supra*, is signed by both the Chapter 13 debtor and his or her attorney. In pertinent part, that form provides,

> If the initial fees ordered by the court are not sufficient to compensate the attorney for the legal services rendered in the case, the attorney further agrees to apply to the court for any additional fees. . . .
>
> If the debtor disputes the legal services provided or the fees charged by the attorney, an objection may be filed with the court and the matter set for hearing.

A.   Consistency of Guidelines with 11 U.S.C. § 330

Boone argues that the bankruptcy court's presumptive fee guidelines are inconsistent with 11 U.S.C. § 330. We disagree.

The customary method for assessing an attorney's fee application in bankruptcy is the "lodestar," under which "the

number of hours reasonably expended" is multiplied by "a reasonable hourly rate" for the person providing the services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991). However, the lodestar method is not mandatory. *See Unsecured Creditors' Comm.*, 924 F.2d at 960 ("Although [*In re Manoa Finance Co.*, 853 F.2d 687 (9th Cir. 1988),] suggests that starting with the 'lodestar' is customary, it does not mandate such an approach in all cases."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 856 (3d Cir. 1994) ("While bankruptcy fees are commonly calculated using the lodestar method, . . . § 330 by no means ossifies the lodestar approach as the point of departure in fee determinations.").

**[3]** We see nothing in § 330 that prevents a bankruptcy court from issuing and then relying on guidelines establishing presumptive fees for routine services in Chapter 13 cases. Such presumptive fees, if set at an appropriate level, have a number of virtues. First, use of presumptive fees in a no-look application saves attorney time that would otherwise be spent preparing detailed applications using the lodestar method. Saving attorney time has the potential, perhaps even likely, consequence of lowering attorney's fees.

Second, use of presumptive fees encourages efficient use of attorney time by providing fair compensation to efficient practitioners and by preventing inefficient practitioners from passing on the cost of their inefficiency. As stated by Judge Lundin,

> Three or four hours of attorney time and a like number of hours of paralegal time in an experienced debtors' attorney's office can produce excellent results in a "typical" Chapter 13 case. Another lawyer who less regularly handles Chapter 13 cases might double or triple the time investment to produce the same or less desirable results. Applying

normal lodestar methodology can penalize the efficient volume counsel by reducing the fee in each case while rewarding the inefficient practitioner with higher fees.

4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1, at 294-22 to -23 (3d ed. 2000 & Supp. 2004).

Third, the presumptive fee guidelines benefit attorneys by providing for earlier payment of fees. In this case, Boone was awarded the $2,350 requested in his no-look fee application several months before he even filed his second fee application. Indeed, since a no-look fee is intended to cover all services required in the usual case, an attorney who opts to file a no-look application may receive full payment even before all the services covered by that payment have been performed.

Fourth, use of presumptive fees saves time that a busy bankruptcy court would otherwise be required to spend dealing with detailed fee applications. As stated by the BAP in this case, "[T]he sheer volume of chapter 13 cases and the rarity of creditor or debtor objections to attorney's fees in such cases make court review of each fee application or fee arrangement administratively burdensome." *Eliapo II*, 298 B.R. at 399; *see also* 4 Lundin, *supra*, § 294.1, at 294-25 to -26 ("It is almost inconceivable that bankruptcy courts would engage in full-scale lodestar calculation of debtors' attorneys' fees in every Chapter 13 case, especially in districts with high-volume Chapter 13 programs.").

**[4]** As the BAP noted in this case, bankruptcy courts around the country have been experimenting for several years with presumptive fees for routine services in Chapter 13 cases, based on guidelines issued by the Executive Office of the United States Trustee. *See Eliapo II*, 298 B.R. at 399. The Fifth Circuit has recently approved the use of a "precalculated lodestar" as a basis for awarding attorney's fees in "typical" Chapter 13 cases. *In re Cahill*, 428 F.3d 536, 541 (5th Cir.

2005) ("This precalculated lodestar aids bankruptcy courts in disposing of run-of-the-mill Chapter 13 fee applications expeditiously and uniformly, obviating the need for bankruptcy courts to make the same findings of fact regarding reasonable attorney time expenditures and rates in typical cases for each fee application that they review."). The Seventh Circuit has also approved the use of presumptive fees in routine Chapter 13 cases. *See In re Kindhart*, 160 F.3d 1176 (7th Cir. 1998) (approving concept of presumptive fee schedule in Chapter 13 cases and remanding to the bankruptcy court to review and update its presumptive fees); *In re Kindhart*, 167 F.3d 1158 (7th Cir. 1999) (approving use of updated presumptive fees); *see also Bueno v. U.S. Bankr. Court (In re Bueno)*, 248 B.R. 581, 583 (D. Colo. 2000) (approving use of presumptive fees for routine services in Chapter 13 case); *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 737 n.5 (8th Cir. BAP 1997) ("Because the majority of work in most Chapter 13 cases is normal and customary, and because of the sheer volume of such cases in most districts, the lodestar calculation may not necessarily be the best method for determining appropriate fees in those cases."); *In re Argento*, 282 B.R. 108, 116-17 (Bankr. D. Mass. 2002) (adopting "standard that incorporates both the 'initial fixed fee standard' for what can be described as the usual services inherent in any routine chapter 13 case and the lodestar method for those services which exceed the routine tasks"); *In re Szymczak*, 246 B.R. 774, 781 (Bankr. D.N.J. 2000) ("Because use of the lodestar method for calculating legal fees does not achieve fair and reasonable results for debtor's counsel in chapter 13 cases, bankruptcy courts should divide services into two categories: work that is standard or normal and customary in a chapter 13 case and work that falls outside of this standard."); *In re Pedersen*, 229 B.R. 445, 447-49 (Bankr. E.D. Cal. 1999) (using presumptive fees for routine services in Chapter 13 case); *In re Watkins*, 189 B.R. 823, 828 (Bankr. N.D. Ala. 1995) (approving use of a "normal and customary" standard for routine services in

Chapter 13 cases, and use of the lodestar method for work that "falls outside of that standard").

We emphasize that the no-look guidelines establish only presumptive fees. If a Chapter 13 practitioner does not wish to apply for fees under the no-look guidelines, he or she is free not to do so and to submit instead a detailed fee application using the lodestar method. Or, if the practitioner has already submitted a no-look application and received presumptive fees, he or she is free to seek additional fees using the lodestar method if the presumptive fees have not provided fair compensation for the time spent on the case. Of course, a practitioner who chooses the latter approach must accept the possibility that the bankruptcy court may take a fresh look at his entire fee application, not just that portion of the application relating to "additional" fees.

**[5]** We therefore conclude that reliance on presumptive guideline fees for routine services in Chapter 13 cases is consistent with § 330.

### B.   Criterion for Awarding Additional Fees

Boone argues that the bankruptcy court used an inappropriate criterion for awarding fees beyond the presumptive fees. We disagree.

In refusing to award additional fees beyond the $1,400 presumptive fee for the "basic case," the bankruptcy court wrote:

> In seeking additional fees, applicant describes two basic areas in which work was performed. The first deals with the normal preparation of the petition, schedules and statement of affairs and the moving of the case to confirmation. For this work applicant billed 9.6 hours (26 time entries) at a cost of $2,254. In a basic case such as this the cost of these services

should not exceed the guideline amount of $1,400 *absent extraordinary circumstances.*

*No extraordinary circumstances are evident.* There were two objections by the Trustee. The first indicated that the debtors had omitted their monthly property tax obligation from Schedule J — Current Expenditures. Delinquent property taxes were set forth on Schedule D so applicant was aware of the tax problem and neglected to address it on Schedule J. The Trustee's second objection simply pointed out that when applicant filed an amended plan for the debtors it neglected to have one of the debtors sign it. Another administrative error.

. . . .

*The problems faced by Applicant in this case seem no more difficult than those faced by Chapter 13 practitioners on a regular basis.* There is no justification shown for the filing and confirmation of the plan in this case exceeding the guideline amount of $1,400.

*Eliapo I*, at *1 (emphasis added).

[6] It is apparent from its order that the bankruptcy court declined to award more than the presumptive guideline amount of $1,400 for a "basic case" because it concluded that there was nothing out of the ordinary about the Eliapos' case. That is, as stated by the court, the problems in the Eliapos' case were "no more difficult than those faced by Chapter 13 practitioners on a regular basis." *Id*. It might have been preferable for the court to have avoided the word "extraordinary" because of the potential for misinterpretation, but we do not understand the court to have required that there be extremely unusual circumstances. In context, it is apparent that court used the word "extraordinary" to mean merely "out-of-the-

ordinary" or "atypical" — that is, extra-ordinary — circum-stances. So understood, the bankruptcy court's criterion for awarding additional fees was proper.

The purpose of the guidelines is to set presumptive fees for ordinary cases. The guidelines contemplate that a Chapter 13 practitioner should be awarded additional fees in out-of-the-ordinary cases. In such cases, the bankruptcy court may award additional fees based on a detailed fee application. Indeed, this is precisely what the bankruptcy court did in this case when it awarded $1,219 (*i.e.*, $469 above the presumptive no-look fee of $750) for out-of-the-ordinary work done by Boone in opposing the mortgage lenders' motions for relief from the automatic stay. Boone contends that he also should have been awarded additional attorney's fees for work unrelated to either the real property or the vehicle loan. However, the bankruptcy court concluded that the problems necessitating this work were typical problems encountered in a Chapter 13 case, and that Boone therefore deserved no more than the presumptive fee.

[7] We hold that the bankruptcy court applied the appropriate criterion in determining Boone's entitlement to additional compensation, and that the application of this standard did not conflict with § 330.

## C.   Hearing

Boone argues that he was improperly denied a hearing and a prompt decision on his second fee application. We agree that Boone was improperly denied a hearing.[4]

---

[4]We disagree with Boone's additional argument that the bankruptcy court abused its discretion, or that he was denied due process, when the bankruptcy court took six months to rule on his second fee application. We agree with the BAP, which wrote in rejecting this argument, "The posture of the chapter 13 case, or the novelty of the issues raised by Boone's Final Application, may have required greater scrutiny by the bankruptcy court. When the bankruptcy court conducts a third-party review of a fee application, it must proceed cautiously." *Eliapo II*, 298 B.R. at 405.

**[8]** Section 330(a)(1) allows attorney's fees to certain bankruptcy professionals, providing that a bankruptcy court "may award" fees "[a]fter notice to the parties . . . and a hearing." However, the Supreme Court has recently construed § 330(a)(1) narrowly, specifically noting that Chapter 13 debtors' attorneys are awarded fees under § 330(a)(4)(B) rather than § 330(a)(1). *See Lamie v. United States Tr.*, 540 U.S. 526, 537 (2004). Unlike § 330(a)(1), § 330(a)(4)(B) contains no explicit notice-and-hearing requirement. It provides simply,

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). We therefore conclude that the notice-and-hearing requirement of § 330(a)(1) does not apply to a fee application in a Chapter 13 case. *Cf. Nelson v. Mickelson (In re Pfleghaar)*, 215 B.R. 394, 397 (8th Cir. BAP 1997) (applying notice-and-hearing requirement of § 330(a)(1) to a fee application under Chapter 13 prior to the Supreme Court's decision in *Lamie*).

**[9]** However, Bankruptcy Rule 2017(b) does apply to Chapter 13 fee applications. Bankruptcy Rule 2017(b) provides that a bankruptcy court, on its "own initiative,"

> after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if

> the payment, transfer, or agreement therefor is for services in any way related to the case.

Fed. R. Bankr. P. 2017(b). We construe the notice-and-hearing requirement of Rule 2017(b) as incorporating 11 U.S.C. § 102(1), which defines "notice and a hearing." Section 102(1)(A) provides: " 'after notice and a hearing', or a similar phrase . . . means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances[.]" 11 U.S.C. § 102(1)(A).

**[10]** Section 102(1)(B)(i) authorizes the bankruptcy court to "act without an actual hearing" after appropriate notice if "such hearing is not requested timely by a party in interest." *Id*. § 102(1)(B)(i). Thus, if no objection to the fee application is filed by an interested party and if the bankruptcy court intends to grant the full amount requested, no hearing is required. However, if the bankruptcy court materially reduces the amount requested, the bankruptcy court has assumed a role that is adverse to the fee applicant. In that event, some sort of hearing is required. As the Third Circuit explained in *Busy Beaver*, "a bankruptcy court, when it disallows certain fees, simulates the role of an adversary, albeit to a circumscribed degree, requiring that any 'disputed' matter be resolved at a fair hearing." 19 F.3d at 846 n.16.**⁵**

We note that "hearing" under § 102(1)(A) has been interpreted flexibly. The Third Circuit in *Busy Beaver* was careful to note that the "anatomy of the hearing lies within the sound

---

**⁵**The Third Circuit in *Busy Beaver* assumed that 11 U.S.C. § 330(a)(1) governed fee awards for debtors' attorneys. We recognize that, after *Lamie*, the controlling provision is § 330(a)(4)(B), which unlike § 330(a)(1) does not include an express notice-and-hearing requirement. But *Busy Beaver* also relied on Rule 2017(b). *See Busy Beaver*, 19 F.3d at 845 n.15 ("Section 330(a) begins '[a]fter notice . . . and a hearing,' a phrase Rule 2017(b) also contains.") (alteration and ellipsis in original). Thus, the court's analysis remains relevant here.

discretion of the bankruptcy judge, and would not necessarily require the presentation of oral testimony." *Id.* "The essential point is that the court should give counsel a *meaningful* opportunity to be heard." *Id.* (emphasis in original). The bankruptcy court should "apprise the [fee] applicant of the particular questions and objections it harbors" and should give the applicant "an opportunity to rebut or contest the court's conclusions." *Id.* at 846-47; *see also In re Spillane*, 884 F.2d 642, 646-47 (1st Cir. 1989) (holding that cross-examination is not required in hearing on fee application). Depending on the circumstances, the hearing requirement may be satisfied without oral presentation of evidence and without oral argument. That is, the "hearing" requirement may, in appropriate circumstances, be satisfied by written submission. All that is required is that the applicant be given "a reasonable opportunity to present legal argument and/or evidence to clarify or supplement his Application." *Pfleghaar*, 215 B.R. at 397; *see also Busy Beaver*, 19 F.3d at 846.

**[11]** In this case, Boone was not given "notice and a hearing" within the meaning of 11 U.S.C. § 102(1). We therefore remand for notice and a hearing consistent with that section. We emphasize that the notice-and-hearing definition in § 102(1) is flexible and sensitive to context. Chapter 13 fee applications are typically rather simple, even in cases where fees beyond the presumptive no-look fees are sought. So long as fair notice and an opportunity to be heard are afforded, the bankruptcy court has considerable freedom to fashion procedures for notice and a hearing that are "appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Because we hold that Bankruptcy Rule 2017(b) required notice and a hearing before the bankruptcy court reduced the compensation requested in Boone's second fee application, we do not need to reach the question whether the Due Process Clause also required notice and a prior hearing.

### D. Presumptive Fee for Work Involving Vehicle Loan

Finally, Boone argues that the district court abused its discretion in failing to award the $200 presumptive fee for work involving a vehicle loan. We do not reach that question.

**[12]** As indicated in our factual narrative, *supra*, it is apparent that Boone did do work involving the Eliapos' secured loan on their 2000 Dodge Durango. However, Boone failed to raise this issue when he appealed to the BAP. As we recently stated in *Burnett v. Resurgent Capital Services* (*In re Burnett*), 435 F.3d 971, 975-76 (9th Cir. 2006), "Absent exceptional circumstances, issues not raised before the BAP are waived." *See also Moldo v. Matsco, Inc.* (*In re Cybernetic Servs., Inc.*), 252 F.3d 1039, 1045 n.3 (9th Cir. 2001). One established "exceptional circumstance" is "when the issue is one of law and either does not depend on the factual record, or the record has been fully developed." *El Paso City v. Am. W. Airlines, Inc.* (*In re Am. W. Airlines, Inc.*), 217 F.3d 1161, 1165 (9th Cir. 2000). The issue of compensation for work involving the vehicle loan depends on the factual record, and it is not clear that the record has been fully developed. The "exceptional circumstance" exception does not apply, and we therefore hold that Boone has waived the issue on appeal. However, we expect that Boone will be able to raise the issue on remand when the bankruptcy court has a hearing on his application.

### Conclusion

We hold that the bankruptcy court's use of the presumptive no-look guideline fees for routine Chapter 13 cases was consistent with 11 U.S.C. § 330, that the court's criterion for awarding additional fees beyond the presumptive no-look fees was proper under § 330, and that the court's failure to hold a hearing on the application for additional fees violated Bankruptcy Rule 2017(b). We therefore affirm in part and reverse in part. We remand to allow the bankruptcy court to hold a

hearing on Boone's application for additional fees, noting that the court has substantial discretion to fashion an appropriate hearing procedure.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.