**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )    BAP No.   CC-15-1109-TaKuKi
                                    )
MORRY WAKSBERG M.D., INC.,          )    Bk. No.   2:06-bk-16101-BB
                                    )
                 Debtor.            )
_____ )
                                    )
THE BANKRUPTCY LAW FIRM, PC,        )
                                    )
                 Appellant,         )
                                    )
v.                                  )    **MEMORANDUM**[*]
                                    )
ALFRED SIEGEL, CHAPTER 7            )
TRUSTEE,                            )
                                    )
                 Appellee.          )
_____ )

Argued and Submitted on November 19, 2015
at Pasadena, California

Filed – December 22, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Chief Bankruptcy Judge, Presiding

Appearances:     Kathleen P. March of The Bankruptcy Law Firm,
                 P.C. argued for appellant; Byron Moldo of Ervin,
                 Cohen & Jessup LLP argued for appellee.

Before:   TAYLOR, KURTZ, and KIRSCHER, Bankruptcy Judges.

[*]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

The Bankruptcy Law Firm, P.C. ("Law Firm"), through its principal attorney, Kathleen P. March, appeals from an order partially granting its request for an allowance of fees and costs as an administrative expense under § 503(b)(1)(A).[1] The Law Firm focuses its appeal solely on the bankruptcy court's sharply reduced fee award. We AFFIRM.

**FACTS**

This is the second appeal to the Panel in this case. See The Bankruptcy Law Firm, PC v. Siegel (In re Waksberg), 2014 WL 5285648 (9th Cir. BAP Oct. 15, 2014) ("Waksberg I"). Previously, the Law Firm appealed from orders entered in the bankruptcy cases of Morry Waksberg, M.D. and his corporation, Morry Waksberg, M.D., Inc.: the first order approved a compromise between Dr. Waksberg, M.D., his mother, Ida Waksberg, and the chapter 7 trustee; the second order substantively consolidated the bankruptcy estates of Dr. Waksberg and the corporation. On appeal, the Panel affirmed the bankruptcy court's approval of the compromise but vacated the substantive consolidation order and remanded the matter back to the bankruptcy court for further proceedings. The memorandum decision in Waksberg I sets forth the factual background of the case; as a result, we recount here only those facts most relevant to the present appeal.

In 2006, Dr. Waksberg and his corporation each filed

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

chapter 11 bankruptcy petitions. An official committee of unsecured creditors was appointed in the corporate case, and the Law Firm was employed as the committee's counsel. The bankruptcy court later entered an order approving a final compensation award to the Law Firm, half of which it collected immediately. Eventually, both bankruptcy cases were converted to chapter 7. The Law Firm's uncollected fees, thus, remained pending as an unpaid chapter 11 administrative expense in the corporate case.

Contentious disputes ensued with respect to Dr. Waksberg's exemption claims and Mrs. Waksberg's claims against the estates. The parties later came to a compromise, and the Trustee moved for approval of the settlement agreement.

Concurrently, the Trustee moved to substantively consolidate the two bankruptcy estates. Seeking to protect its claim to payment in the corporate case, the Law Firm filed a single opposition to both of the motions; its focus, however, was against substantive consolidation. The bankruptcy court granted both motions, and the Law Firm appealed. On appeal, the Panel concluded that the circumstances did not meet the Ninth Circuit's standard for substantive consolidation, as it resulted in inequity to the Law Firm.

Back before the bankruptcy court, the Law Firm filed a motion seeking to allow its fees and costs incurred in opposing the consolidation and appealing the consolidation order as a chapter 7 administrative expense under § 503(b)(1)(A) (the "§ 503(b) Motion"). It attached Ms. March's declaration and a billing record of the Law Firm's services rendered in

3

connection with the consolidation dispute. Eventually, the Law Firm's post-conversion administrative expense request increased to $202,580.[2]

The Law Firm asserted that it successfully blocked the Trustee's "illegal attempt" to use $2.6 million dollars belonging to the corporate estate to pay claims of the individual estate. As its efforts necessarily preserved the corporate estate, the Law Firm asserted that it was entitled to administrative payment of its fees and costs, based on two theories of recovery: first, the plain language of § 503(b); and second, the "fundamental fairness" doctrine announced in Reading Co. v. Brown, 391 U.S. 471 (1968). Reading provides for the allowance of damages resulting from a postpetition tort claim as an administrative expense, even in the absence of a benefit conferred to the bankruptcy estate. According to the Law Firm, the Trustee breached his fiduciary duty to the corporate estate and its claimants (including the Law Firm) when he successfully petitioned for substantive consolidation.

The Trustee opposed. He argued that § 503(b)(1)(A) did not support the Law Firm's request, as the nature of the fees requested did not fall within that particular Code provision. And he contested that the Reading exception applied.

---

[2] This amount is not in the record, but taken from the Law Firm's briefs on appeal. At the hearing on the § 503(b) Motion, the Law Firm clarified that it sought an additional $30,000 in fees and $77 in costs in connection with its reply to the Trustee's opposition. It does not appear, however, that the Law Firm filed a supplemental billing record with respect to the additional work performed.

4

But to the extent the bankruptcy court was inclined to grant the request, the Trustee argued that the Law Firm's requested fees and costs were grossly inflated. He challenged the nature and quantity of the time entries and provided approximately 60 examples of tasks administrative in nature billed at either $800 an hour, for Ms. March, or $400 an hour for the Law Firm's single associate ("Associate"). The Trustee also challenged Ms. March's $800 billing rate, asserting that the rate was higher than other esteemed bankruptcy practitioners within the judicial district.

Pursuant to a bankruptcy court order, the Law Firm filed a revised billing record (the "Billing Record"). As Ms. March stated in an accompanying declaration, the revised document responded to the bankruptcy court's instruction for a "more detailed itemization" of the fees incurred and billing in one-tenths of an hour.

At the hearing, the bankruptcy court rejected a number of the Law Firm's theories for allowance of administrative expense treatment, including application of the Reading exception and protection of the integrity of the bankruptcy system. Turning to § 503(b), it read portions of its tentative ruling into the record and determined that, as a result of the Law Firm's efforts, a substantial benefit to the corporate estate inured. It noted, however, that it was still required to find that the requested fees and costs were an actual and necessary cost.

The bankruptcy court found that the Billing Record reflected several issues, including numerous entries for associate attorney, paralegal, or administrative-level work

5

billed by Ms. March at $800 an hour. It also found that $800 was not a reasonable hourly fee for Ms. March for the services rendered in connection with the consolidation dispute. Stating that it was required to determine how much it would have cost to obtain the substantive consolidation reversal, the bankruptcy court estimated the number of hours it believed that an experienced practitioner would have reasonably expended in opposing consolidation, prosecuting the appeal, and filing the motions for stay pending an appeal before the bankruptcy court and the BAP.

The Law Firm disagreed with the bankruptcy court's analysis. Ms. March argued that nothing in the Billing Record was unnecessary to obtaining vacatur of the consolidation order. She also argued that her $800 hourly rate was justified based on her qualifications and experience including her tenure as a former bankruptcy judge and her triple certification as a bankruptcy specialist. The rhetoric apparently escalated, as the bankruptcy court stopped Ms. March and instructed her to change the tone of her voice. Ms. March apologized but continued to assert that the result obtained by the Law Firm "was stupendous." Ms. March did not mince words in her belief that the bankruptcy court was wrong:

> So frankly, Your Honor, it is reversible error if you go there. And my firm will appeal again if necessary. . . . So not only is this error of law and you have no facts to support where Your Honor is going, but it's extremely dysfunctional because until my firm is paid and out of the case there's not going to be the substantive consolidation that –

Hr'g Tr. (Apr. 1, 2015) at 34:10-11, 15-19.

The bankruptcy court determined that it would grant in

6

part the § 503(b) Motion and allow $26,000 in fees and $3,237 in costs. Immediately following the hearing, the Law Firm filed a timely notice of appeal.

The Law Firm also opposed the proposed order lodged by the Trustee. It asserted that the lodged order did not comport with the bankruptcy court's ruling at the hearing and requested that the bankruptcy court enter its tentative ruling into the record.

The bankruptcy court disagreed and entered the order granting in part the § 503(b) Motion. It also issued a memorandum decision.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in reducing the amount of the Law Firm's requested fees and costs.

**STANDARDS OF REVIEW**

We review the bankruptcy court's decision to reduce fees pursuant to an administrative expense allowance for an abuse of discretion. See Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 707 (9th Cir. 1988); Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.), 294 B.R. 306, 309 (9th Cir. BAP 2003). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in

7

inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). And, if the bankruptcy court's "findings are plausible in light of the record viewed in its entirety, the [Panel] cannot reverse even if it is convinced it would have found differently." Husain v. Olympic Airways, 316 F.3d 829, 835 (9th Cir. 2002), aff'd, 540 U.S. 644 (2004).

**DISCUSSION**

**A. Scope of appeal**

This case presents an anomalous situation, for the reason that it does not involve a traditional fee application or legal fees incurred by a law firm retained by the estate. This case, instead, involves the unusual allowance of a creditor's legal fees and costs as an administrative expense under § 503(b)(1)(A).[3] Unusual, because a creditor's legal fees are typically allowed as an administrative expense under § 503(b)(4), to the extent the creditor's expense is allowable under § 503(b)(3). But see The Law Offices of Neil Vincent Wake v. Sedona Inst. (In re Sedona Inst.), 220 B.R. 74, 81 (9th Cir. BAP 1998) ("[W]here a creditor makes a substantial contribution in a case, reasonable professional fees and costs may be awarded under § 503(b)(4) regardless of whether the creditor has an independent allowable expense under

---

[3] No cross-appeal was taken from the allowance of the administrative expense and that determination is now final. The Trustee argues in his brief that § 503(b) did not support any award of fees to the Law Firm. This does not, however, qualify as a notice of cross-appeal. See generally Fed. R. Bankr. P. 8002, 8003.

8

§ 503(b)(3).").

Notwithstanding the peculiarities here, there is no question that the bankruptcy court was required to consider the reasonableness of the Law Firm's requested fees and costs, given the effect of administrative expense treatment. See generally In re Dant & Russell, Inc., 853 F.2d at 706 ("'[A]ctual' and 'necessary' are construed narrowly so as 'to keep fees and administrative costs at a minimum.'") (citation omitted). In doing so, the bankruptcy court had "wide discretion in determining the reasonableness of fees . . . ." The Margulies Law Firm v. Placide (In re Placide), 459 B.R. 64, 73 (9th Cir. BAP 2011).

Here, after finding that the Law Firm conferred a substantial benefit to the corporate estate, the bankruptcy court proceeded to examine the requested fees and costs for reasonableness. In doing so, it found that some of the fees were unreasonable and, thus, it reduced the amount of fees it deemed allowed as an administrative expense.

In this respect, the Law Firm's arguments as to the Reading exception are irrelevant. Whether the Law Firm's fees were allowed under § 503(b)(1)(A) or under the Reading exception, the fees were always subject to a reasonableness analysis. Contrary to the Law Firm's belief, neither scenario presented it with carte blanche to obtain payment of fees and costs in whatever amount it deemed appropriate.

///

///

///

**B.** **The bankruptcy court did not abuse its discretion in reducing the amount of fees and costs allowed as an administrative expense.**

The Law Firm argues that the bankruptcy court ignored the three possible methods for calculating reasonable fees and erred by arbitrarily cutting fees. According to the Law Firm, these three methods are: (1) the plain language of § 503(b)(1)(A), which allows fees that are "actual" and "necessary" to preserving the estate; (2) the 12 "lodestar" factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975); and (3) the "common fund" doctrine. This last argument, regarding the common fund doctrine, is raised for the first time on appeal; thus, we do not address it. See Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 872 n.12 (9th Cir. 2012) (appellate court may decline to address argument not raised before bankruptcy court).

The overlap between the Law Firm's other arguments is significant and much of it is based on the "uncontroverted" evidence presented to the bankruptcy court, e.g., the Billing Record and Ms. March's declaration. According to the Law Firm, the uncontroverted evidence showed that it actually incurred the fees and that these fees were necessary to recover the 2.6 million dollars for the corporate estate.

Under either "method," we conclude that the bankruptcy court did not abuse its discretion in assessing reasonableness and in concluding that a reduction in the amount of the allowed administrative expense was warranted.

**1.    Reasonableness of fees requested**

The lodestar method is the customary method for assessing fees in bankruptcy, "under which 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services." Law Offices of David A. Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592, 598 (9th Cir. 2006). The lodestar method, however, is not mandatory in all bankruptcy cases. Id.

In applying the lodestar, the court must consider "some or all of twelve relevant criteria" set forth in Kerr. Carter v. Caleb Brett LLC, 757 F.3d 866, 868-69 (9th Cir. 2014). But see Brown v. Baden (In re Yagman), 796 F.2d 1165, 1184 (9th Cir. 1986) ("There is no need to rigidly apply the factors set forth in Kerr . . . but the court must make some evaluation of the fee breakdown submitted by counsel."), opinion amended on denial of reh'g sub nom., In re Yagman, 803 F.2d 1085 (9th Cir. 1986)). In any event, the loadstar method subsumes many of the Kerr factors. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1204 n.3 & 1209 n.11 (9th Cir. 2013).

Contrary to the Law Firm's arguments, to the extent the bankruptcy court was required to apply the lodestar method, the record here reflects that it did so. As discussed further below, it determined a reasonable hourly rate for Ms. March and the Associate in rendering these particular services. It next determined the number of hours reasonably necessary to complete the services. And, finally, it calculated the lodestar recovery by multiplying these figures, without further adjustment. Under these circumstances, that the bankruptcy

11

court did not identify the Kerr factors by name is of no moment. See Gonzalez, 729 F.3d at 1204 n.3 & 1209 n.11.

The bankruptcy court's determination of unreasonableness was based on the following findings: (1) the hourly rates for Ms. March and the Associate were excessively high; (2) some of the services rendered by Ms. March and the Associate were administrative in nature or otherwise noncompensable; and (3) some of the fees were redundant or otherwise unnecessary. After eliminating fees it considered "excessive, redundant, unnecessary, or otherwise not compensable," the bankruptcy court adjusted the hourly rates and number of hours expended to that it deemed reasonable. In doing so, it utilized a single, hourly rate of $400 and approved only the following services and time:

- Preparing and arguing the objection to the substantive consolidation portions of the Trustee's motions: 15 hours;
- Preparing and arguing the Waksberg I appeal: 30 hours; and
- Preparing and arguing the motions for stay pending appeal: 20 hours.

On this record, the bankruptcy court's determinations were not erroneous.

## 2. Reasonable hourly rates

A reasonable hourly rate for the purposes of computing the lodestar amount is the "prevailing market rates in the relevant community." Gonzalez, 729 F.3d at 1205-06 (citation omitted). "[T]he relevant community is the forum in which the [] court sits." Id. (citation omitted). Then, "[w]ithin this geographic community," the court considers "the experience,

12

skill, and reputation of the attorney." Id. (citation omitted). And, "the fee applicant has the burden of producing 'satisfactory evidence' that the rates he [or she] requests meet these standards." Id. (citation omitted).

The Billing Record reflects billing only by Ms. March and the Associate. We address them in the inverse.

### a. The Associate's hourly rate

The bankruptcy court expressed doubt as to whether the Associate's $400 hourly rate was warranted; it noted that the attorney was only four years out of law school and a graduate of an unaccredited law school. The record shows, however, that it did not reduce the Associate's hourly rate; instead, it utilized a blended hourly rate for both the Associate and Ms. March. On this record, this was not inappropriate or disfavorable to the Law Firm.

Save for a few entries generically identified as "Westlaw research" in connection with the appeal, it does not appear that the Associate performed any services requiring her skills as an attorney. Other than preparing several proofs of service and the bill of costs, the Associate did not draft any of the Law Firm's papers. Instead, she spent her time assembling documents, tables and appendices, preparing forms, electronically filing and downloading documents, and cite checking. Although these tasks were undoubtedly required from a practical standpoint, they were not compensable at $400 an hour.

### b. Ms. March's hourly rate

The bankruptcy court next found that although she was well

13

educated, Ms. March's $800 hourly rate for the services rendered in connection with the consolidation litigation was excessively high. In doing so, it made several findings[4] as to Ms. March's experience, skill, and reputation as a bankruptcy attorney.

The bankruptcy court was entitled to consider these factors. With 14 years of judicial experience in the Central District of California, the bankruptcy judge has extensive, particularized knowledge of the local bankruptcy bar. And, the bankruptcy judge was entitled to rely on personal knowledge of the prevailing market rates for bankruptcy practitioners in the Central District of California in determining a reasonable hourly rate for the services provided in opposing consolidation. As bankruptcy courts frequently adjudicate fee applications, there is no doubt that the bankruptcy judge's knowledge extended to local billing rates for attorneys across the spectrum. At the hearing, the bankruptcy court, in fact, referred to other attorneys by name who billed at $800 an hour and higher and concluded that Ms. March was not of their caliber. On this record, its findings were not clearly erroneous.

The Law Firm contends that the bankruptcy court abused its discretion in reducing Ms. March's hourly rate to her billing rate in 2006, and that the antiquated hourly rate was not commensurate with Ms. March's experience and qualifications eight years later.

---

[4] See Appendix A.

14

The record shows, however, that the bankruptcy court did not reduce Ms. March's hourly rate to her 2006 billing rate. It merely observed that, in its opinion, Ms. March's hourly rate significantly increased between 2006 and 2014, and that the $800 hourly rate was not a rate approved by any client or court. The bankruptcy court did not use Ms. March's 2006 hourly rate as a benchmark in setting a reasonable hourly rate. Rather, as stated, the reduction was based on its judgment of the market value of Ms. March's services in opposing and appealing the consolidation, including the complexity of legal work involved.

The Law Firm also argues that its uncontroverted evidence - Ms. March's declaration and the Billing Record - established that Ms. March billed at $800 an hour. That may be so, but the declaration was not dispositive on the question of whether the rate was reasonable. That was a question committed solely to the discretion of the bankruptcy court.

And, the movant, the Law Firm - not the Trustee and certainly not the bankruptcy court - bore the burden of producing satisfactory evidence that Ms. March's $800 hourly rate was the prevailing market rate in the Central District of California, based on her experience, skill, and reputation in the community. The Law Firm did not submit evidence showing, for example, that in 2014, Ms. March billed at $800 an hour in a bankruptcy case in the Central District of California and that the hourly rate was approved by a client or the bankruptcy court in any other case. Nor did the Law Firm produce expert testimony or market data. Other evidence beyond the Law Firm's

15

self-selected evidence may have existed; but the Law Firm did not present it to the bankruptcy court.

### 3. Nature of services rendered

The bankruptcy court found that a number of entries in the Billing Record related to services that were noncompensable, either because they were administrative in nature or part of an attorney's overhead. In support of this finding, it identified a partial list of 33 time entries containing such services. It highlighted such tasks that Ms. March billed at $800 an hour[5] and tasks that the Associate billed at $400 an hour.[6]

The record supports the bankruptcy court's findings. The Billing Record is replete with entries involving tasks that were administrative or paraprofessional in nature. Billing these services at $800 or $400 an hour was not appropriate.

Perhaps the Law Firm does not have adequate secretarial or paraprofessional support, leaving these types of tasks to Ms. March and the Associate. Even if that were the case, the Law Firm is expected to discount the rates or forgo collection, commensurate with the level of skill required for the task at hand.

The Law Firm contends that of the foregoing, only $896 was clerical in nature; the remaining tasks, totaling $17,316, were tasks that required an attorney's knowledge and skill. We disagree that only an attorney may prepare a form notice of appeal or a proof of service, assemble the body of an appellate

---

[5] See Appendix B.

[6] See Appendix C.

16

brief, or attach exhibits.  Many paraprofessionals do so, under the supervision of an attorney; none of these activities require a law degree or bar membership.  The attorney, in any event, cannot expect compensation for these types of tasks at her typical hourly rate.[7]

### 4.    Reasonable number of hours

In computing the lodestar amount, the court "must [also] determine a reasonable number of hours for which the prevailing party should be compensated." Gonzalez, 729 F.3d at 1202.  In this context, "reasonable" means "[t]he number of hours . . . [which] could reasonably have been billed to a private client." Id. (citation omitted).  Billing records, of course, may include hours that could not reasonably be billed to a private client, e.g., entries for hours that are "excessive, redundant, or otherwise unnecessary." Id.  In such instances, the court may exclude these hours under one of two methods: (1) conducting an "hour-by-hour analysis of the fee request"; or (2) making an across-the-board percentage cut[] either in the number of hours claimed or in the final lodestar figure . . . ." Id. (citation omitted).  If the latter and the reduction is greater than ten percent, the court must "set forth a concise

---

[7]  And, that fees are not compensable for services clerical in nature should be of no surprise to Ms. March or the Law Firm.  In In re Stewart, 2008 WL 8462960, at *3 (9th Cir. BAP Mar. 14, 2008), aff'd, 334 F. App'x 854 (9th Cir. 2009), the Law Firm appealed from the bankruptcy court's reduction of fees that the Law Firm incurred as chapter 13 counsel.  Among other things, the bankruptcy court's reduction included fees incurred for clerical/secretarial tasks.  This Panel affirmed the bankruptcy court; and the Ninth Circuit affirmed the Panel.

17

but clear explanation of its reasons for choosing a given percentage reduction." Id. at 1203.

Here, the bankruptcy court found that the Billing Record contained entries that were "excessive, redundant, or otherwise unnecessary." It then stated that it calculated the reasonable number of hours "[a]fter reviewing the charges reflected on [the Billing Record], and assessing the tasks that were actually necessarily performed for the benefit of creditors, and eliminating any charges that the Court considered excessive, redundant, unnecessary or otherwise not compensable . . . ." Thus, it appears that the bankruptcy court engaged in an hour-by-hour analysis of the requested fees. This was within the bankruptcy court's discretion. See Gonzalez, 729 F.3d at 1203.

The Law Firm argues that the bankruptcy court "fail[ed] to identify any task done by [it] which was unnecessary to preserve the estate." It asserts "everything that [it] did opposing the [consolidation] was necessary to obtain the result of preserving that $2.6 million of corporation estate money." Id. at 14.

Noting that it had "extensive knowledge of the issues in dispute in this case and [was] in an excellent position to evaluate how long it should have taken [the Law Firm] to perform the services," the bankruptcy court found that the Billing Record contained "entries for services rendered that were not necessary to the benefit conferred and entries for excessive amounts of time spent on services that would otherwise be compensable." In doing so, it pointed out the

18

specific examples of extraneous and excessive time entries.[8]

The Billing Record confirms the bankruptcy court's findings. There are entries in which both Ms. March and the Associate conducted legal research on the same date; the nature of that research, however, is not detailed in relation to the Associate. We also note other questionable entries, "lumped" together with legitimate tasks, such as Ms. March: reviewing the final fee order in the chapter 11 case; searching the Waksberg individual bankruptcy case for the compromise motion; and calendering deadlines. And, each time that a motion, opposition, brief, order, and even the memorandum decision in Waksberg I was filed or entered on the docket, Ms. March - at $800 an hour - downloaded the document. We do not doubt that the Law Firm actually spent the amount of time reflected in the Billing Record. But, that there was a tangential connection to the consolidation dispute did not render each and every time entry "necessary" within the meaning of § 503(b)(1)(A).

What becomes apparent is the Law Firm's all or nothing approach to the fees requested. As plainly stated in its brief and reiterated at oral argument, it seems to believe that once the bankruptcy court determined that its efforts conferred a benefit to the corporate estate and it filed an adequate billing record, the bankruptcy court's scrutiny should end. This line of thinking, however, ignores the additional considerations that the bankruptcy court was required to undertake, including an evaluation of reasonableness and the

---

[8] See Appendix D.

19

necessity of fees incurred.

Based on the foregoing, the bankruptcy court did not abuse its discretion in the method undertaken to consider reasonableness of the fees requested by the Law Firm. Nor, on this record, can we find any basis for determining that it abused its discretion in reducing those fees. We remain mindful of the fact that this was not a typical fee application for attorneys' fees or even a prevailing party fee award; there was the overlay of § 503(b), which dictated restraint in the amount of fees allowed. See Nat'l Labor Relations Bd. v. Walsh (In re Palau Corp.), 139 B.R. 942, 944 (9th Cir. BAP 1992) (Section 503(b) is construed narrowly to keep fees and costs to a minimum and to preserve limited estate assets for the benefit of creditors). And, here, bankruptcy court oversight was particularly important where no external client was reviewing the fees and where the Law Firm's efforts were on account of its own administrative expense claim.

Given the clear inappropriateness of the Law Firm's billings in some areas, such as the attempt to exact premium payment for clerical or paralegal work, and given the Law Firm's failure to support its fee request with evidence of reasonableness beyond the bare facts of self-determined rate and self-directed hours on task, the record provides no basis for a conclusion that the bankruptcy court abused its discretion.

**C.  Whether the bankruptcy court harbored a "personal negative opinion" of Ms. March such that it influenced the ruling.**

The Law Firm contends that the bankruptcy court improperly

20

injected its "personal negative opinion of Ms. March into its decision." The bankruptcy court's statements at the hearing and in its memorandum decision, while at times pointed, were neither derisive nor personally hostile to Ms. March.

The Law Firm further asserts that the bankruptcy court's statements were unsupported based on the uncontroverted evidence before it; namely, Ms. March's declaration that, in her opinion, she was "extremely highly qualified" as a Yale Law School graduate, triple certified bankruptcy specialist, Rutter author on California bankruptcy law, and a former bankruptcy judge. It contends that the bankruptcy court's statements, thus, constituted a "judge acting as a witness," in violation of Federal Rule of Evidence 605.

The Law Firm is incorrect. Again, that Ms. March's declaration - based on her subjective belief of the value of her services in this case – was uncontroverted did not make its contents established fact. The bankruptcy court was not required to accept this assertion without question. A judge's role fundamentally involves forming judgments and opinions; that the bankruptcy court valued Ms. March's services in this case lower than did Ms. March did not violate Federal Rule of Evidence 605.

Moreover, as stated, the bankruptcy court's determination here necessarily required an evaluation of Ms. March's experience, skill, and reputation as an attorney. This was not a situation involving a pure question of law where the bankruptcy court's opinion on the value of Ms. March's services in the case would be out of place or inappropriate. At the

21

time that the § 503(b) Motion was filed, the bankruptcy court had presided over these bankruptcy cases for approximately eight years.  It possessed institutional knowledge of the cases and of counsel; the basis for its opinion of the value of the services rendered was not unfounded.

**D.    Fees incurred in preparing and litigating the § 503(b) Motion.**

Finally, the Law Firm argues that the bankruptcy court abused its discretion in disregarding fees incurred in preparing and litigating the § 503(b) Motion.  It reiterates that § 503(b) is a fee provision statute and, thus, it is entitled to its fees in pursuing and defending the fee request.

The bankruptcy court denied the Law Firm's request for fees incurred in preparing and litigating the § 503(b) Motion. In doing so, it asked the Law Firm whether it had case authority to support the additional $47,543.67 requested for preparing the motion when it was a professional not employed by the estate.  After the Law Firm responded in the negative, the bankruptcy court denied allowance of those fees.

The bankruptcy court did not abuse its discretion in denying an allowance of these fees.  No authority exists for allowing as an administrative expense a creditor law firm's fees in preparing a § 503(b)(1)(A) request.  To the extent the Law Firm relies on N. Sports, Inc. v. Knupfer (In re Wind N' Wave), 509 F.3d 938 (9th Cir. 2007), that case involved a request under § 503(b)(4) and, thus, it is distinguishable in that regard.  In any event, it appears that the holding in

In re Wind N' Wave is subject to question following the United States Supreme Court's decision in Baker Botts L.L.P. v. ASARCO LLC, 135 S.Ct. 2158 (2015) (holding that, in the absence of an express statutory provision, an attorney is not entitled to compensation for litigating a fee request). But, as it is not necessary to our decision, we make no determination as to the continuing validity of In re Wind N' Wave in the wake of Baker Botts.

What the Law Firm essentially seeks is an award based on fee-shifting; that this is contrary to the American Rule in litigation and impermissible under § 503(b)(1)(A) is clear. The bankruptcy court's decision not to allow these particular fees is consistent with both the American Rule and Baker Botts, which precludes fee-shifting in the absence of an express statute so providing.

**CONCLUSION**

We AFFIRM the bankruptcy court.

**Appendix A**

The bankruptcy court found that Ms. March:

- "[L]acked the judgment and advocacy skills" of an attorney who billed at $800 an hour;

- Only began practicing bankruptcy law in 2002, after her request for reappointment to the bankruptcy bench was denied;

- Lacked the benefit of a mentor in bankruptcy law prior to taking the bench;

- Submitted papers that were long, argumentative, and difficult to read;

- During hearings in the case, "insult[ed]" and "threaten[ed] the trier of fact" at the podium during oral argument;

- "[L]ack[ed] the judgment to know when it would be in her client's best interest not to advance a particular argument, objection or position"; and

- Was neither a nationally recognized bankruptcy expert nor highly regarded by her peers or "the bankruptcy community at large."

**Appendix B**

The bankruptcy court identified the following tasks, which Ms. March billed at $800 an hour:

- Preparing a notice of appeal;
- Preparing the designation of record on appeal;
- Reviewing the table of contents, excerpts of record, and the Law Firm's opening brief;
- Preparing cover pages to the excepts of record;
- Preparing instructions for Federal Express retrieval and a copy of the excerpts of record;
- Picking up documents and instructing the Associate on how to file documents in the appeal; and
- Checking the excerpts of record cites in the Law Firm's reply brief.

**Appendix C**

The bankruptcy court highlighted that the Associate billed $400 an hour for the following tasks:

- Preparing tables of contents and authorities to the Law Firm's opposition to consolidation;
- Efiling and serving the Law Firm's opposition;
- Efiling the notice of appeal;
- Preparing a transcript order form;
- Preparing the notice of transcript and proof of service, and efiling those documents;
- Preparing tables of contents and authorities to the motion for stay pending appeal;
- Preparing a proof of service and efiling the motion for stay pending appeal;
- Assembling an appendix to the motion for stay pending appeal;
- Preparing a proof of service and efiling the motion for stay pending appeal to the BAP;
- Preparing a proof of service and efiling supplement to motion for stay pending appeal with the BAP;
- Preparing a proof of service and efiling the statement of issues on appeal;
- Preparing a proof of service and efiling the designation of record on appeal;
- Preparing a proof of service and efiling the Law Firm's reply to the motion for stay pending appeal;
- Assembling documents for the excerpts of record;
- Adding excerpt of record cites to the Law Firm's opening

26

brief;

- Cite checking the Law Firm's opening brief;
- Preparing tables of contents and authorities to the Law Firm's opening brief;
- Preparing a proof of service and efiling the Law Firm's opening brief;
- Adding excerpts of record cites to the Law Firm's reply brief;
- Preparing a proof of service and efiling the Law Firm's reply brief;
- Finalizing the Law Firm's bill of costs, and preparing a proof of service and efiling the bill of costs; and
- Preparing a proof of service and efiling the Law Firm's reply to the Trustee's opposition to the bill of costs.

**Appendix D**

The bankruptcy court found that the following was extraneous or excessive:

- 7 hours to prepare the motion for stay pending appeal to the bankruptcy court, then an additional 5 hours to prepare a substantively identical motion with the BAP;
- 34 hours to prepare the opening brief on appeal, which advanced identical arguments as its opposition, in a somewhat modified fashion;
- 22.5 hours to prepare the reply brief, which contained the same arguments as the stay motion and opening brief;
- Significant charges for researching issues such as the procedures in the Central District of California for filing emergency motions, when such procedures were clearly spelled out in the bankruptcy court's local rules and manual;
- "Multiple charges for preparing for oral arguments, which it argued the same issues repeatedly";
- Charges for "advancing the argument that the [T]rustee's conduct [could] be tortious, entitling it to compensation under Reading v. Brown," which "border[ed] on the frivolous and should never have been included"; and
- Charges for preparation of a settlement offer to the Trustee.